UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL S.,[1]<br><br>Plaintiff<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>Defendant. | Case No. 8:19-cv-01259-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Michael S. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). [Dkt. 1.] The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 7 & 10] and briefs addressing disputed issues in the case [Dkt. 14 ("Pl.'s Br."), Dkt. 15 ("Def.'s Br.") & Dkt. 16 ("Pl. Rep.")]. The Court has taken the parties' briefing under submission without oral argument. For the reasons discussed below, the Court finds

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party in this case.

that this matter should be remanded.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On June 11, 2016, Plaintiff filed an application for DIB, alleging disability beginning January 1, 2014. [Administrative Record ("AR") 10.] Plaintiff's claims for benefits were denied initially and upon reconsideration. [*Id.*] A hearing was held before Administrative Law Judge Stacey Zimmerman ("the ALJ") on December 6, 2018. [*Id.*]

On February 11, 2019, the ALJ issued an unfavorable decision applying the five-step sequential evaluation process for assessing disability. [AR 15-26]; *see* 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1). At step one, the ALJ concluded that Plaintiff had engaged in substantial gainful activity in 2015, working part time (for "a couple of hours two to three days a week" interviewing students for military scholarships) during part of the alleged period of disability. [AR 12-13.] At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar degenerative disc disease with radiculopathy and migraine headaches. [*Id.*] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [*Id.*]; *see* 20 C.F.R. part 404, subpart P, appendix 1. [AR 16.]

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") for a range of light work as defined in 20 C.F.R. §404.1567(b) with the following limitations:

> [H]e can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours in an 8 hour workday; sit 6 hours in an 8 hour workday; occasionally climb ladders, ropes, or scaffolds; frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; cannot be exposed to extreme cold or more than occasional vibration; and mentally limited to simply, repetitive tasks due to difficulty concentration from migraine headaches. [AR 16.]

At step four, the ALJ found that Plaintiff was not able to perform any past relevant work (including work as a training officer, in aircraft parts and equipment sales, or as a real estate agent). [AR 20.] At step five, the ALJ found that Plaintiff was a younger individual with at least a high school education, able to communicate in English, and capable of performing other work that exists in significant numbers in the economy, including the representative occupations mail sorter, cashier II, and self-service store attendant.

The Appeals Council denied review of the ALJ's decision and this action followed.

In his challenge to the Commissioner's decision, Plaintiff raises the following arguments: 1) the ALJ failed to properly consider the opinion of Plaintiff's treating neurologist, Dr. Wenqiang Tian; and 2) the ALJ failed to properly assess Plaintiff's testimony regarding his pain and limitations. [Pl. Br. at 1, 5.] Plaintiff requests reversal and remand for payment of benefits or, in the alternative, remand for further administrative proceedings. [Pl. Br. at 16-17.] The Commissioner asserts that the ALJ's decision should be affirmed. [Def. Br., *passim*.]

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

**The ALJ Failed To Provide Sufficient Basis For Rejecting Plaintiff's Neurologist's Opinion**

Plaintiff contends the ALJ erred by failing to properly consider the medical opinion evidence, including the opinion of his treating neurologist, Dr. Tian. The Court agrees.

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In general, a treating physician's opinion is entitled to more weight than an examining physician's opinion and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[2] *See Lester*, 81 F.3d at 830. "The medical opinion of a claimant's treating

---

[2] For claims filed on or after March 27, 2017, the opinions of treating physicians are not given deference over non-treating physicians. *See* 20 C.F.R. §§ 404.1520c (providing that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your

4

physician is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (internal quotation marks and citation omitted).

Generally, an ALJ should consider the extent of the treating physician's relationship with the patient, including the frequency of examination and the nature and extent of treatment, as set forth in 20 C.F.R. §404.1527(c)(2)-(6); *Trevizo*, 871 F.3d at 676. Whether the medical source being evaluated is a specialist in the particular area being addressed is also highly relevant. 20 C.F.R. §1527(c)(5) (We generally give more weight to the opinion of a specialist about the medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.).

An ALJ must provide "clear and convincing" reasons supported by substantial evidence to reject the uncontradicted opinion of a treating or examining physician. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). Where such an opinion is contradicted, however, an ALJ may reject it by stating "specific and legitimate" reasons supported by substantial evidence. *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31); *Trevizo*, 871 F.3d at 675. The ALJ can satisfy this standard by "'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *see also* 20 C.F.R. §§ 404.1527(c)(2)-(6) (when a treating physician's opinion is not

---

medical sources"), 416.920c; 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). Because Plaintiff's claim was filed before March 27, 2017, the medical evidence is evaluated pursuant to the treating physician rule discussed above. *See* 20 C.F.R. §§ 404.1527, 416.927; [Def. Br. at 2 n.3.]

5

given controlling weight, factors such as the nature, extent, and length of the treatment relationship, the frequency of examinations, the specialization of the physician, and whether the physician's opinion is supported by and consistent with the record should be considered in determining the weight to give the opinion), 416.927(c)(2)-(6) (same).

The parties do not dispute that Dr. Tian is both a treating physician and a neurologist, *i.e.*, a specialist particularly suited to treat patients and render opinions related to head injuries[3] and migraine headaches. Plaintiff began receiving treatment with Dr. Tian in June 2011. [AR 744 (Headaches Residual Functional Capacity Questionnaire) (handwritten note that says: "Symptoms started in 2011. I saw Mr. Strom from June 2011. W.Q."). From June 2016 on (which the Court notes is when Plaintiff filed his claims for DIB, alleging an onset date in 2014), Dr. Tian saw Plaintiff approximately every 2-3 months. [AR 743.] A brief look through the record demonstrates that Dr. Tian's statement is supported by numerous entries in the record. [*E.g.*, AR 292 (April 2016 "Headache"), 293 (April 2015 ("Chronic Post-Traumatic Headache"), 296 (September 2014 (Chronic Post-Traumatic Headache), 316 (April 2016 summary by Dr. Tian).].

Dr. Tian filled out a "Headaches Residual Functional Capacity Questionnaire" dated November 28, 2018. [AR 743-44.] The form was more than a "check box" form. Dr. Tian diagnosed Plaintiff with "chronic medically intractable migraine," with headaches that were "intermittent moderate to severe throbbing headache on the left side." [AR 743.] He noted that Plaintiff suffered from

---

[3] Plaintiff is a veteran who suffers from past traumatic brain injuries and headaches. [E.g., AR 290 (noting "Chronic Post-Traumatic Headache" in an entry dated March 24, 2014).] While not controlling in a Social Security Administration proceeding because the standards applied are different, Plaintiff has been found to be 100% disabled based on a number of problems, including his migraine headaches. [AR 19.]

6

"photophobia" and that the headaches occurred "3-4 times per month" and would last "Hours to days." [*Id.*] He specified what made Plaintiff's headaches worse (e.g., bright lights, noise, stress) and what made them better (lying in a dark room and hot/cold packs). [*Id.*] He noted that Plaintiff "failed multiple medications" and that a side effect of the medications was "drowsiness." [AR 743-44.]

Dr. Tian then opined, consistent with the factual basis he set forth which is discussed above, that Plaintiff would need a break and generally be precluded from working when he was suffering from a headache. [AR 744.] He reiterated that this would happen 3 – 4 times per month and would take a number of hours (6 to 48) to resolve. He also noted that Plaintiff would be capable of low stress jobs but would be expected to be absent "[a]bout four times a month." [*Id.*] Finally, he opined that "Intermittent headache severely affect Mr. Strom's ability to work at a regular job on a sustained basis," and noted that "Mr. Strom has had extensive workups/tests," and "No additional tests are needed at this moment." [*Id.*]

Despite Dr. Tian's long treating physician relationship with Plaintiff, her somewhat detailed opinion, and the availability of some of Dr. Tian's supporting notes and entries in the medical record, the sum total of the ALJ's discussion of Dr. Tian's opinion is as follows:

> I have considered and given little weight to Wenquiang Tian, M.D's opinion that the claimant would need to take unscheduled breaks during the workday, three times per month, lasting 6 to 48 hours, and would need to lie down or sit quietly to rest, and would likely miss four days of work per month (Ex. 11F). She stated that the claimant's intermittent migraine headache severely affect the claimant's to work [sic] at the regular job on a sustained basis (Ex. 11F). Dr. Tian's assessment is inconsistent with the evidence as a whole including the medical evidence and the claimant's testimony about his daily activities and caring for his children, grocery shopping, driving, doing chores, and working part time for the U.S. Marine Corp Reserves until 2016.

[AR 19.]

Plaintiff contends that no matter which standard is applied – in other words,

7

whether the ALJ was required to meet the higher "clear and convincing" standard or was only required to provide "specific and legitimate" reasons to reject Dr. Tian's opinion – the ALJ failed to meet her burden. The Court agrees.

First – and at a very fundamental level – the ALJ's discussion of Dr. Tian's opinion omits *any mention* that Dr. Tian is a long-time treating physician and a neurologist, which is obviously a relevant specialty when dealing with migraine headaches. Although the Commissioner argues that it was "obvious" from Dr. Tian's two-page questionnaire that Dr. Tian is a treating physician, it is clear that the ALJ did not mention this long-term relationship or Dr. Tian's specialization. It is not for the Court to surmise what the ALJ thought or considered; the ALJ must put that information in her decision if the Court is to consider it.

Next, the ALJ's broad and conclusory statement that Dr. Tian's opinion is inconsistent with "the medical evidence" does not provide a specific and legitimate reason (or clear and convincing evidence) for discounting that opinion. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required . . . The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."); *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (same).

The Commissioner argues that the ALJ's one-paragraph, separate discussion of the notes of another neurologist, Dr. Kao, specifically undermines Dr. Tian's opinion. Dr. Kao's treatment notes show – *consistent* with Dr. Tian's opinion and notes – that Plaintiff complained of chronic migraine headaches and that medication did not reduce the frequency of headaches. Dr. Kao also noted that Plaintiff could try "occipital nerve blocks" and that "the frequency of claimant's headaches was not significant enough for botox treatment." [AR 18 and citations therein.]

8

Notably, Dr. Kao did not offer an opinion as to how Plaintiff's headaches might affect his ability to perform a full work week without interruption. Nor did Dr. Kao provide – or the ALJ deduce – how frequent Plaintiff's headaches would have to be for botox treatment to be indicated.[4] While not part of the record, a simple internet search shows that Botox (the FDA approved brand medication for migraines) is not approved for "fewer than 14 headaches days per month" with more than 4 hours of headache per headache day. *See, e.g.*, https://www.botoxchronicmigraine.com/. Dr. Tian's opinion that Plaintiff would be incapacitated by headaches 3 – 4 times per month is thus not inconsistent with Dr. Kao's notation that botox treatment is not appropriate for Plaintiff. The ALJ's "medical opinion" to the contrary is unsupported by any evidence in the record and amounts to mere (and apparently incorrect) speculation on the ALJ's part. The ALJ thus failed to offer any reason why her interpretation of the medical evidence, rather than Dr. Tian's, is correct.

Finally, the ALJ's assertion that Dr. Tian's opinion was inconsistent with Plaintiff's daily activities is not supported by the record. The ALJ did not explain how Plaintiff's caring for his children (he is not the sole childcare provider), doing some grocery shopping, driving, and doing light chores is inconsistent with having headaches that would require him to lie down, miss work, or be off task from an inability to concentrate up to 3 to 4 times a month. A claimant need not be entirely incapacitated to qualify for DIB. *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996). The ALJ's also pointed to Plaintiff's part time work for the Marine Corp in 2015 as inconsistent with the limitations stated by Dr. Tian. Again, the ALJ

---

[4] Dr. Kao did not address, and the ALJ did not mention, *any* other medical source opinion that addressed the specific issue on which Dr. Tian opined, that is, the severity of Plaintiff's migraines and the limitations those headaches would place on Plaintiff's ability to consistently work a full day.

9

ignores that the work was not only part time, but that Plaintiff was able to call in sick as necessary, and that his employer was flexible in scheduling his work to help deal with Plaintiff's medical problems. [AR 49-50, 52, 65, 209.] Thus, Plaintiff's part time work, as described, is consistent, rather than inconsistent, with the limitations offered by Dr. Tian.

In sum, the ALJ's reasons for rejecting Dr. Tian's opinion were not specific and legitimate or supported by substantial evidence in the record. Remand is warranted on this issue.

## V. REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. *See Trevizo*, 871 F.3d at 682. Where no useful purpose would be served by further proceedings and the record has been fully developed, it may be appropriate to exercise this discretion to direct an immediate award of benefits. *See id*. at 682-83. But where there are outstanding issues that must be resolved before a determination of disability can be made or it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Garrison*, 759 F.3d at 1021 (if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," a court must remand for further proceedings).

In this case, there are outstanding issues that must be resolved before a final determination can be made. Because the ALJ failed to provide specific and legitimate reasons for discounting Dr. Tian's opinion, the record is not fully developed, Plaintiff's entitlement to benefits remains unclear, and remand for further administrative proceedings would be useful. *See Garrison*, 759 F.3d at 1020-21. On remand, the ALJ should conduct a review of the entire record in a

manner that is consistent with the Court's findings.[5]

**IT IS SO ORDERED.**

DATED: November 13, 2020

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

---

[5] As this matter is being remanded for further consideration of Dr. Tian's opinion, the Court declines to reach Plaintiff's additional argument that the ALJ improperly discredited his subjective symptom testimony. However, the ALJ should consider Plaintiff's additional contentions of error when evaluating the evidence on remand.